UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____

| | | |
|---|---|---|
| ALICIA ANSWER | ) | CIVIL ACTION NO. |
|     Plaintiff | ) | |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| BERTERA SUBARU OF HARTFORD, INC. | ) | |
|     Defendant | ) | |
| _____ | ) | JANUARY 21, 2014 |

<u>COMPLAINT</u>

1.  This is an action brought by a consumer against an automobile dealership for violation of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.,* the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, the Connecticut Retail Installment Sales Finance Act ("RISFA"), Conn. Gen. Stat. §§ 36a-770 *et seq.,* the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110a *et seq.,* Breach of the Implied Warranty of Title pursuant to Conn. Gen. Stat. § 42a-2-312 and the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d), and for breach of contract, fraud, and misrepresentation.

2.  Plaintiff, Alicia Answer, ("Answer" or "Plaintiff") is a consumer residing in East Hartford, Connecticut, and she is a "consumer" as that term is defined in 15 U.S.C. § 1602(i).

3.  Defendant, Bertera Subaru of Hartford, Inc. ("Bertera Subaru" or "Defendant"), is a Connecticut corporation that operates a car dealership in Hartford.  Bertera Subaru is a "creditor" as defined by 15 U.S.C. § 1602(g).

4.  This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1640(a), 15 U.S.C. § 1681p, 15 U.S.C. § 2310(d)(3)(B), and 28 U.S.C. § 1331.

5.  This Court has jurisdiction over Bertera Subaru because it is located in Connecticut and regularly does business in Connecticut.

6.  Venue in this Court is proper, because the transaction alleged herein occurred in this state.

7.  In December, 2013, Plaintiff's motor vehicle, a 1999 Toyota Sienna, broke down.

8.  Plaintiff desired to purchase a newer Toyota Sienna, and she found a 2004 Toyota Sienna, VIN # 5TDBA23C04S024079 advertised for a cash price of $7,993 on Bertera Subaru's website.

9.  Plaintiff called Bertera Subaru on or about December 11, 2013, and she spoke with a sales representative, Stephen Reid, who acted at all times as an authorized representative of Bertera Subaru.

10. Reid told Plaintiff that the 2004 Sienna was still in the dealership's inventory, and Plaintiff told Reid that she would be right over.

11. Plaintiff made arrangements to have her 1999 Toyota Sienna towed to Bertera Subaru, as she desired to trade it in towards the purchase of the 2004 Sienna, and she drove to Bertera Subaru in a rented car.

12. Plaintiff went to Bertera Subaru intending to purchase the 2004 Sienna for the advertised price of $7,993.

13. This advertised price was comparable to the retail pricing for other 2004 Toyota Sienna's in December 2013, and Plaintiff reasonably believed that the listing on

Bertera Subaru's website was a legitimate offer to sell the 2004 Toyota Sienna for that price.

14.  Plaintiff arrived at Bertera Subaru and met with Reid and asked to see the 2004 Toyota Sienna.

15.  Reid informed Plaintiff that she would have to pay approximately $12,900 to purchase the 2004 Toyota Sienna.

16.  Plaintiff asked about the advertisement on the website, and Reid responded that the lower price was for Internet sales only.

17.  This was a false and deceptive statement, because Bertera Subaru does not permit consumers to consummate vehicle purchases on-line but instead requires that customers must come to the dealership to purchase vehicles.

18.  Reid steered Plaintiff to a 2010 Honda Pilot, which he told her was advertised on Bertera Subaru's website for between $17-18,000 and could be purchased by her at that price.

19.  Plaintiff decided to purchase the Honda Pilot, because she believed that she was obtaining it at a fair price whereas she would have to overpay if she wanted top purchase the 2004 Sienna.

20.  Pam Sundara, another Bertera Subaru employee who was acting at all times as an authorized representative of Bertera Subaru, prepared papers for the purchase of the Honda Pilot.  Sundara was working with Chris Piteo, the Manager of Bertera Subaru, throughout that process.

21.  Piteo and Sundara informed Plaintiff that she was approved for the purchase of the Honda Pilot and presented her with contract documents including, on information

and belief, a purchase order, a retail installment sales contract, a GAP Addendum, and documents transferring ownership of Plaintiff's Toyota Sienna to Bertera Subaru.

22.  Plaintiff was informed that she was being allowed $2,000 for her Toyota Sienna.

23.  Plaintiff also paid a cash down payment of $3,000, which down payment she believes was reflected in the contract documents.

24.  Plaintiff was not permitted to keep these documents however, and she was not permitted to take delivery of the Honda Pilot.

25.  Bertera Subaru representatives told Plaintiff that she could not take possession of the Honda Pilot because, although she was approved, the transaction was not "finalized" yet.

26.  Plaintiff had, as of the time that she signed the retail installment sales contract, taken all steps necessary for her to become obligated under that contract.

27.  Plaintiff believes and accordingly alleges that the retail installment sales contract that she signed contained disclosures under the Truth in Lending Act.  These were the only disclosures involved in the transaction, and they were not provided to Plaintiff in a form that she could keep.  Plaintiff has never received those disclosures.

28.  Additionally, Plaintiff believes and accordingly alleges that disclosures in the retail installment sales contract were not accurate.  Specifically, because Bertera Subaru had not delivered the Honda Pilot to Plaintiff, it had not yet extended the benefit of the credit that was extended under the retail installment sales contract.  The annual percentage rate disclosed in the contract should have been disclosed as an estimated rate, since the true annual percentage rate could not be determined until the date that

4

the value of the contract was actually extended.  However, Bertera Subaru disclosed the annual percentage rate without disclosing that the rate was an estimate.

29.  Plaintiff further believes and alleges that Bertera Subaru manipulated the numbers in the retail installment sales contract by means of inflating the true value of Plaintiff's Toyota Sienna and by increasing the sales price of the Honda Pilot by a like amount, there by inaccurately itemizing the amount financed and causing Plaintiff actual damages because she was unaware of that inaccurate itemization and the true cost of the Honda Pilot.

30.  Plaintiff returned to Bertera Subaru on December 12 and on December 13 hoping to take delivery of the Honda Pilot and, on each occasion, she was informed that the deal was not yet "finalized" and that Bertera Subaru could not let her have possession of the Honda Pilot that she had purchased.

31.  In reality, Bertera Subaru was continuing to submit Plaintiff's credit application to multiple finance companies, including Wells Fargo Bank, NA, Bank of America, Ally Financial, and JP Morgan Chase, N.A., which companies checked Plaintiff's credit report with one or more consumer reporting agencies between December 11 and December 12.

32.  Plaintiff had not authorized Bertera Subaru to continue to submit her credit application or to have her reports accessed, and Bertera Subaru has violated the Fair Credit Reporting Act, 15 U.S.C. § 1681b(f), by continuing to use Plaintiff's reports after she had already consummated the transaction and without applying for new credit.

33.  Bertera Subaru is liable for actual damages and statutory damages for its willful and negligent violation of 15 U.S.C. § 1681b(f) pursuant to 15 U.S.C. §§ 1691n and 1691o.

34.  Additionally, on information and belief, Bertera Subaru never registered the Honda Pilot in Plaintiff's name, even though it had charged her the cost of registration and also charged her a conveyance fee to register the vehicle.

35.  Additionally, on information and belief, Bertera Subaru never assigned the title for the Honda Pilot to Plaintiff, thereby breaching the implied warranty of title provided by operation of law pursuant to Conn. Gen. Stat. § 42a-2-312.

36.  Bertera Subaru's breach of warranty of title was willful and undertaken in bad faith and with a reckless disregard for Plaintiff's rights, entitling her to claim common law punitive damages that are anticipated to exceed $50,000.

37.  As of December 16, Bertera Subaru had not yet notified Plaintiff that it was prepared to deliver the Honda Pilot.

38.  On that date, Plaintiff returned to Bertera Subaru and demanded that she be refunded her $3,000 down payment and that her Toyota Sienna be returned to her.

39.  Plaintiff met on that date with Razmik Ghazmarian, who is the vice president and a director of Bertera Subaru, and Ghazmarian refused to return the Toyota Sienna or to refund the down payment.

40.  Plaintiff was entitled to rescind the retail installment contract because of Bertera Subaru's failures to comply with the Connecticut Retail Installment Sales Finance Act, which incorporates the requirements of the Truth in Lending Act and which

also requires that a seller provide a copy of a retail installment contract to a consumer at the time that the contract is signed.

41. On December 19, 2013, Plaintiff by her counsel asserted claims for damages related to the conduct of Bertera Subaru and its refusal to honor Plaintiff's demand for a return of her down payment and her property and for its conduct in this transaction.

42. Bertera Subaru has failed to satisfy Plaintiff's monetary demands and it has continued to retain possession of the Toyota Sienna and Plaintiff's down payment.

43. Plaintiff is entitled to an order that the contract is rescinded and Bertera Subaru should be ordered to return $5,000 to Plaintiff, representing her $3,000 down payment and the agreed upon value of her Toyota Sienna.

44. Bertera Subaru is liable to Plaintiff under CUTPA for having refused to sell the 2004 Toyota Sienna for the advertised price, for having engaged in a "bait and switch" scheme in order to steer Plaintiff to the Honda Pilot, and for its other actions and violations of Connecticut and federal law, as aforedescribed.

45. Bertera Subaru has engaged in fraudulent conduct for which it is liable.

46. Bertera Subaru has misrepresented Plaintiff's rights and misrepresented to Plaintiff that she had been "approved" for the Honda Pilot when there was no final approval by either Bertera Subaru or any intended assignee.

47. Bertera Subaru has breached the contract to sell the vehicle.

**Wherefore, Plaintiff claims,** actual damages pursuant to 15 U.S.C. § 1640(a)(1), statutory damages of $2,000, plus a reasonable attorney's fee pursuant to 15 U.S.C. § 1640(a)(3); actual damages and attorney's fees pursuant to 15 U.S.C. § 1691o; actual damages, statutory damages of $1,000 pursuant to 15 U.S.C. § 1691n;  a rescission of the contract and a return of the amounts paid thereunder; actual damages pursuant to Conn. Gen. Stat. § 42-110g(a); statutory punitive damages pursuant to Conn. Gen. Stat. § 42-110g(g); attorney's fees pursuant to Conn. Gen. Stat. § 42-110g(d); common law punitive damages for bad faith breach of the implied warranty of title and for breach of contract, damages for fraud, misrepresentation; common law punitive damages for its fraud; and attorney's fees pursuant to Conn. Gen. Stat. § 42-150bb.

**PLAINTIFF, ALICIA ANSWER**

By: /s/ Daniel S. Blinn_____
  Daniel S. Blinn, ct02188
  dblinn@consumerlawgroup.com
  Consumer Law Group, LLC
  35 Cold Spring Rd. Suite 512
  Rocky Hill, CT  06067
  Tel. (860) 571-0408
  Fax (860) 571-7457